**SELVA & SONS, INC., Appellant,**

v.

**NINA FOOTWEAR, INC., Appellee.**

**Appeal No. 82–586.
Cancellation No. 12801.**

United States Court of Appeals,
Federal Circuit.

April 12, 1983.

---

Arthur O. Klein, New York City, argued for appellant. With him on brief were Alfred W. Vibber and Mark J. Regen, New York City.

Steven H. Bazerman, New York City, argued for appellee. With him on brief were Eric D. Offner, Angelo Notaro, Julius Rabinowitz and Perla M. Kuhn, New York City, of counsel.

Before RICH, NICHOLS and BALDWIN, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the October 7, 1981, decision of the Trademark Trial and Appeal Board (board) of the United States Patent and Trademark Office (PTO) dismissing appellant's petition to cancel appellee's registration No. 875,184, issued August 19, 1969 of the mark NINA for ladies' shoes. Dismissal resulted from appellee's motion to dismiss on various grounds, as hereinafter explained. The board's decision is in part vacated, in part reversed, and the case is remanded.

## Background

Appellee owns three trademark registrations, each on a mark whose dominant portion consists of the name NINA: (1) No. 681,187, issued June 30, 1959, for NINA, in distinctive lower case script with a crown over the "i", for ladies shoes; (2) No. 752,-173, issued July 12, 1963, for NINA DOLL, in script with a doll, for ladies shoes; and, (3) No. 875,184, issued August 19, 1969, for NINA, in block letters, for ladies' shoes, the registration sought to be cancelled. Appellant was the owner of expired registration No. 590,175, issued May 2, 1954, for NINO, in script, for clothing (not renewed), and is the owner of registration No. 1,124,953 for NINO, in script for dance shoes for use by men, women and children.

In 1978, appellee opposed the last of appellant's registrations above listed, and appellant filed a counterclaim for cancellation of appellee's three registrations listed above. The result of these actions was a written settlement agreement of February 20, 1979, between the parties hereto in which each contracted to refrain from challenging the validity of the other's registration(s) and from challenging "their right to use and to sell goods under such Trademark Registrations [sic]." (Goods are sold under marks, not registrations.)

On November 3, 1980, appellant filed a petition to cancel appellee's registration No. 875,184 (NINA in block letters) on the ground that appellee filed a fraudulent § 8 affidavit of continued use (15 U.S.C. § 1058(a)), alleging, inter alia:

7) On information and belief respondent has filed as specimens, proving the continued use of the trademark NINA in block letters, which were attached to an affidavit dated September 20, 1974, in which the specimen attached had the word NINA in special script and a crown design superimposed over the letter "i". The crown design and the special script form a depiction which is a different commercial impression than the commercial impression rendered by the word NINA in plain block letters. The registration of applicant was fraudulently maintained, because the specimens filed with the Section 8 affidavit by applicant on September 20 of 1974, clearly indicated that applicant was using at that time a trademark which was a material change from the trademark NINA in block letters. This does not constitute a technical defect in the affidavit, but a fatal defect in the affidavit.

A month after filing the petition to cancel, appellant filed, on December 3, 1980, under Fed.R.Civ.P. 34, a request for the production of documents asking for

1. All agreements entered into between Nina [appellee] and Nino Gesellschaft mit beschraenkter Haftung and Co. relating to the Opposition No. 49519.

2. All correspondence between Nina and Nino Gesellschaft mit beschraenkter Haftung and Co.

It appears that the above-named German company opposed appellee's application serial No. 276,943 which resulted in the registration appellant now seeks to cancel. The present record does not disclose how that dispute was resolved.

On January 14, 1981, appellant's counsel wrote appellee's counsel asking him whether he could come over to his office to inspect and copy the above-requested documents. We infer from the record that this request was rebuffed.

On February 26, 1981, appellee moved the board to dismiss the petition for cancellation, first, "on the ground that the Petitioner has failed to state a claim upon which relief can be granted since the issues in this opposition [sic] have already been decided by this Court [sic], thus estopping Petitioner from bring this action against the Respondent or to dismiss on such other grounds as the Board liens [sic] just and proper," and on the second specific ground that "Petitioner lacks standing to bring it." Appellee also made some ancillary motions for a stay and attorney's fees.

## Board

On the motion to dismiss, the board stated the issue to be "whether respondent's

use of the mark 'NINA' shown in script form with a crown design over the "I" demonstrates that the registered mark in block letters was still in use and whether the filing of respondent's affidavit under Section 8, in view of the change in the presentation of respondent's mark, constituted fraud on this office." [1] The board resolved the issue as follows:

Although the mark is displayed in stylized form on the specimen submitted with this Section 8 affidavit, there can be no question that respondent was continuing its use of the mark on the same article for which the term was registered. We believe that the mark as used in the specimen must be considered substantially the same as the mark registered. Although the stylized mark and the mark "NINA" in block capitals are not exactly the same, one being in script form with a crown design appearing above the "I" and the other being in block letters, we believe that both marks would be perceived by potential purchasers, who would not be expected to remember the exact display of the stylized mark, as legally identical. * * * Further, fraud, the willful withholding of material information to obtain something that the party practicing such deceit would not otherwise have been entitled to [citation omitted], cannot be said to have taken place where the office had before it a specimen showing the mark as currently used. Respondent cannot be charged with the willful withholding of any material information under these circumstances, and we

believe that on this record there can be no fraud.

In response to appellee's motion to dismiss on the second ground, namely, that petitioner lacked standing,[2] the board stated that "the question is whether the registered mark 'NINA' in block letters for ladies' shoes is substantially identical to any of respondent's unchallenged existing registrations." The board concluded that

* * * we must consider the mark herein sought to be cancelled to be substantially identical to the mark shown in Registration No. 681,187, also for ladies' shoes. Accordingly, we also hold that petitioner cannot be damaged by the continued existence of respondent's registration sought to be cancelled because of the subsistence of an unchallenged registration for a substantially identical mark for identical goods.

For the above reasons, the board granted appellee's motion and dismissed appellant's petition for cancellation. This appeal followed.

### Arguments on Appeal

Appellant first argues that because the board relied on three exhibits attached to appellee's memorandum in support of its motion to dismiss, it was not treated as such a motion, and was in fact treated as a motion for summary judgment and should have been, but was not, disposed of as provided in Fed.R.Civ.P. 56, pursuant to Rule 12(b), last sentence.[3] Further, appellant

---

1. Section 8, 15 U.S.C. § 1058(a) (1982), at that time provided that:

Each certificate of registration shall remain in force for twenty years: *Provided,* That the registration of any mark under the provisions of this chapter shall be canceled by the Commissioner at the end of six years following its date, unless within one year next preceding the expiration of such six years the registrant shall file in the Patent and Trademark Office an affidavit showing that said mark is still in use or showing that its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark. Special notice of the requirement for such affidavit shall be attached to each certificate of registration.

2. The board's opinion does not expressly refer to the issue of lack of standing. However, it is clear that this is what it was dealing with because appellee's motion argued the standing question under the heading "PETITIONER HAS NO STANDING SINCE IT CANNOT BE DAMAGED." Appellant responded in kind, arguing "damage." The board discussed "damage."

3. The last sentence of Rule 12(b), pertaining to a motion previously listed in (b) as "(6) failure to state a claim upon which relief can be granted," reads as follows:

If, on a motion asserting the defense numbered (6) * * * matters outside the pleading are presented to and not excluded by the court [here board], the motion *shall* be treat-

states, if the motion was treated as one to dismiss, it should not have been granted, for, in deciding such motions, the allegations of the complaint (here a petition) are to be taken as true.

Appellant also argues that the board's handling of appellee's motion failed to meet the requirements of Rule 56 because "issues of fact were involved in the Board's decision," and because discovery was essential since "facts essential to justify the opposition [sic, cancellation] were only in the possession of the appellee." As to the former rationale, appellant argues:

> In making its decision to dismiss the cancellation proceeding, the Board made several findings of fact. The Board found 1) the mark as used in the specimen must be considered substantially the same as the mark registered, 2) the appellee was using the plain block letters trademark NINA, as registered when it filed its Affidavit of Use, and 3) that no fraud was committed by the appellee. As the Board has to make these findings of fact, in order to reach the issue of law, whether or not the appellant could be damaged which was decided in favor of appellee, the motion for summary judgment should not have been granted.

Because "facts solely within the possession of the appellee," such as "the use which was being made by the appellee of the trademark and whether the appellee was entitled to use this trademark" were "solely within the possession of the appellee," appellant argues that the motion should have been stayed while discovery proceeded.

Appellee counters that the board did not consider any extraneous matter in ruling on its motion to dismiss. The three exhibits referenced by appellant were (1) a copy of appellee's registration No. 875,184, the subject of the petition to cancel; (2) a copy of the settlement agreement upon which appellee based its estoppel argument (which argument the board refused to consider); and, (3) illustrations of appellee's mark in

another registration of and application for marks corresponding to the mark of the challenged registration. Appellee notes that because "the Board cited the actual trademark registrations contained in the Office's records * * *, it did not consider the third exhibit in reaching its decision." Due to the nature of the above described exhibits, appellee argues, their mere submission "cannot convert the motion to one for a summary judgment." The board "merely reviewed the pleadings and found that under the facts pled, fraud could not exist as a matter of law." Appellant's complaint, says appellee, must be that "the board erred in ignoring a statement of a legal conclusion of fraud which was set forth in the petition. While the well-pleaded facts of a complaint are accepted as true for purposes of determining a motion to dismiss, 'sweeping legal conclusions cast in the form of factual allegations' are not so admitted." Appellee also asserts that appellant's pleadings are to be tested under the more particular requirements of Fed.R. Civ.P. 9(b), given that fraud is alleged.

Asserting that fraud is not made out unless it is shown that the respondent intentionally made a misrepresentation of a material fact, not actually believing it to be true, upon which petitioner relied to its detriment, appellee states that "a fraud claim will be disallowed as a matter of law, where the party upon whom the alleged fraud was perpetrated, was cognizant of the fact and in no way has been factually deceived." Appellee concludes that "appellant's claim expressly recognizes that the Office, in accepting appellee's specimens, could not have been deceived, for it was aware of the truth of the facts, notwithstanding the legal import to be attached to those facts. Thus analyzed, appellant's fraud claim must fail as a matter of law."

Appellee also argues, in agreement with the board, that NINA in block letters gives the same commercial impression as NINA in script form with a crown over the "i",

---

ed as one for summary judgment and disposed of as provided in Rule 56, *and all parties shall be given reasonable opportunity*

*to present all material made pertinent to such a motion by Rule 56.* [Emphasis ours.]

and therefore that appellant lacks standing, concluding that—

It is settled beyond all reasonable doubt that, as a matter of law, a party in the position of an opposer or a cancellation petitioner cannot be legally damaged, within the meaning of the Lanham Act, where the applicant or registrant already has an existing registration of substantially the same or similar mark for substantially the same or similar goods. [Citations omitted.]

Appellee's final argument is that, even if the board did decide the case in summary fashion, appellant can point to no facts which, if discovered, would command reversal of the board's decision, saying:

The facts to which appellant points as "essential to justify his opposition" is a settlement agreement between appellee and an unrelated third party to this proceeding, which terminated an opposition proceeding instituted against the trademark application which matured into the registration subject to appellant's cancellation challenge herein. * * * However, as this fact has no relevance to the Board's decision below, appellant cannot invoke Rule 56(f) to avoid appellee's motion.

Appellee also requests that, should this court reverse the board, it be directed to consider the settlement agreement between the parties in the earlier opposition, No. 62,855, relied on to support estoppel and which the board would not consider.

Appellant responds to the above by noting that the board relied on other extraneous material—the section 8 affidavit filed by appellee—and also observes that appellee failed to note the procedure followed by the PTO in accepting section 8 affidavits, which "carries out only a perfunctory review to determine if the filed papers comply with the requirements of the Act."

## OPINION

A major problem with this case is that the board's opinion gives no indication of what it was deciding, beyond its opening statement that "This case comes up on re-spondent's motion to dismiss the petition for cancellation and on petitioner's cross-motion for default judgment and to compel."

The cross-motion, not previously mentioned herein, was based in part on appellee's untimely filing of its motion to dismiss. Appellee thereafter submitted excuses which the board accepted and, in its discretion, denied the motion for a default judgment. The motion "to compel" referred specifically to appellant's December 3, 1980, request for documents which motion appellant asked to have granted, if a default judgment was not entered in its favor, "before respondent's motion [to dismiss] is decided." The board never dealt with this matter, apparently under the impression it could be ignored since it decided (1) "that on this record there can be no fraud"; (2) "no consideration will be given to [the estoppel] aspect of respondent's motion"; and (3) "petitioner cannot be damaged by the continued existence of respondent's registration sought to be cancelled because of the subsistence of an unchallenged registration for a substantially identical mark for identical goods." This third holding appears to be the board's resolution of appellee's motion to dismiss on the ground that appellant had "no standing" to petition to cancel. The board did not specify whether its dismissal of the petition to cancel rested on ground (1) or on ground (3) above, or on both. Each point will be discussed individually.

## I. Failure to State a Claim—The Fraud Issue

When the board rendered its decision and opinion, appellant's attorney was anticipating that the board would rule on his motion to compel discovery and appellee's motion to dismiss under Rule 12(b)(6) after (1) testing the adequacy of his pleading and, (2) determining whether his client had standing to petition to cancel. The board, however, with no prior notice to appellant, dismissed the petition through an opinion that did not deal with the adequacy of the petition to cancel as a pleading and which said

nothing about discovery. Without the benefit of any other facts that appellant was expecting to discover and present, the board proceeded to a complete resolution of the merits of the case as though it were deciding a motion for summary judgment.

■ It was within the province of the board to so treat the case, pursuant to the last sentence of Rule 12(b), note 3, supra, and it is clear to us that it did in fact do so, whether consciously or thoughtlessly, and apparently on the assumption that any evidence appellant sought to produce could not possibly be pertinent. It has been held that when this is done certain rights of the parties must be insured. This was well explained in *Davis v. Howard,* 561 F.2d 565, 571–72 (5th Cir.1977), wherein a district judge was in the situation of the board here:

> We do not hold that a notice to convert a 12(b)(6) motion into a summary judgment must be by written order, but the record must adequately demonstrate that all counsel were aware of the intentions of the district judge to treat the motion as converted, together with a reasonable opportunity afforded to the non-moving party to present, by way of affidavit or otherwise, anything necessary to rebut the contention of the moving party. * * *
>
> Today we hold that where matters outside the pleadings are considered in disposition of a Rule 12(b)(6) motion, so as to automatically convert it to one for summary judgment pursuant to Rule 56, or as one made *sua sponte,* the Rule 56 strictures of notice, hearing and admissibility into evidence are strictly required.

The court concluded by saying:

> The bridling devices at issue here sustain and insure the most elementary operation of our civil law. The concepts of notice, admissibility, and opportunity to be heard are ancient primaries. * * * However correct the conclusion below may be in the end, we cannot allow the shaving of principles for expediency when those precepts assure order and justice.

*Accord, e.g., Underwood v. Hunter,* 604 F.2d 367, 369 (5th Cir.1979) (cases cited);

*Newman Oil Co. v. Atlantic Richfield Co.,* 597 F.2d 275, 278 (Em.App.1979) (cases cited).

The rule itself, in stating the effect of not excluding "matters outside the pleading," gives some notice that a motion to dismiss may be treated as a motion for summary judgment if it is supported by documentary material. The adverse party may then be under at least implicit notice that now is the time to come up with opposing documents, if he is able to do so, to show that the case is not appropriate for summary disposition. If he does so, he shows that he understands the situation rightly and needs no further notice. If he then wants further discovery, this is when he should show that further discovery might lead to relevant evidence.

■ That is not this case, however, because appellant's memorandum in opposition to the motion and its cross-motions for default judgment or compelled discovery show that it expected that only threshold matters, not the ultimate merits, were going to be decided. In these circumstances, it was an abuse of discretion to decide the merits of the case in a finally dispositive manner. In effect, the board took appellant by surprise; a result not intended by the rules. *E.g., Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979); *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 585 F.2d 454 (10th Cir.1978); *Johnson v. RAC Corp.,* 491 F.2d 510 (4th Cir.1974); *Adams v. Campbell County School District,* 483 F.2d 1351 (10th Cir.1973); *Scott v. Courtesy Inns, Inc.,* 472 F.2d 563 (5th Cir.1973); *Georgia Southern and Florida Railway Co. v. Atlantic Coast Line Railroad Co.,* 373 F.2d 493, 498 (5th Cir.1967) ("The notice requirements of Rule 12 guarantee that the automatic change of a motion to dismiss into a *motion for summary judgment will not be accomplished by an unforeseeable thrust with no chance to parry. Notice is ascendant and primary in the Federal Rules. They do not tolerate foils of obfuscation.").

Contrast the instant case with what the board did in *King Automotive, Inc. v. Speedy Muffler King, Inc.,* 667 F.2d 1008, 212 USPQ 801 (Cust. & Pat.App.1981). That too was a trademark cancellation case involving a motion to dismiss a petition alleging fraud. The motion asserted that the allegations of fraud were inadequate as a matter of law.

The board dismissed the petition, holding that appellant had failed to state a claim by its failure to

> * * * assert that at the time the applications were filed, respondent was aware of the use by a third party of the mark "SPEEDY MUFFLER KING" for mufflers. Petitioner also fails to allege that the use by a third party of "SPEEDY MUFFLER KING" was prior to * * * respondent's use and was continuous and that these facts were known to respondent at the time it filed its applications. [*Id.* at 1010, 212 USPQ at 802.]

Noting that Fed.R.Civ.P. 9(b) "requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud," the CCPA affirmed the dismissal by the board, agreeing that the appellant's *pleadings* were deficient. *Id.* at 1010–11, 212 USPQ at 803. Here the board pointed to no facts which appellant ought have pleaded to make out a prima facie case of fraud. Rather, it took the opportunity presented by the motion to dismiss to decide a number of substantive issues as though on a motion for summary judgment, and without warning that it was going to do that.

At oral argument, appellee opined that "the decision of the board, however nominated, is correct," because the board's main point was that there was no deception, and because appellant never demonstrated, pursuant to Rule 56(f), that the board should have stayed its decision "to permit affidavits to be obtained or depositions to be taken or discovery to be had." [4] We fail to see why appellant should have made a showing under Rule 56(f) when it was not aware that the board intended to proceed under that rule.

■ Summary judgment is a drastic remedy.[5] We hold that appellant had the right to know on what procedural theory the board was acting. Insofar as the board's decision and opinion deal with the fraud issue and the motion to dismiss the petition to cancel for failure to state a claim on which relief can be granted, we *vacate* and *remand* the case for consideration in light of the principles discussed herein.

## II. Estoppel and the Board's Refusal to Pass On It

Appellee's second numbered ground for moving to dismiss was that appellant was estopped to challenge the registration sought to be cancelled by a settlement agreement entered into by the parties hereto in terminating Opposition No. 61,424. Appellant counters that it is not bound by the agreement because of appellee's "unclean hands" in entering into it. The board declined to consider the issue of estoppel because, it said

> * * * the Board is not the proper tribunal for resolution of any arguments relating to possible breach of agreement.

No authority was cited by the board. Appellee's brief before us requests that, in the event we reverse the board, we direct that the board consider the agreement in any future proceeding, citing 15 U.S.C. § 1069,

---

**4.** Fed.R.Civ.P. 56(f) states:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions taken or discovery to be had or may make any other order as is just.

**5.** *See* Kera, *Tips From the TTAB,* 71 TradeMark Rep. 59 (1981). This former member of the board notes:

The effect of the granting of summary judgment is to end the case and thereby foreclose any subsequent opportunity to amend pleadings, take additional discovery, adduce live testimony at trial, offer further evidence, devise any new theory in support of a claim for relief or a defense, file any subsequent brief or present oral argument.

section 19 of the Trademark Act, which provides in pertinent part:

> In all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable, may be considered and applied.

Appellee also cites two cases in support of its request: *Danskin, Inc. v. Dan River, Inc.*, 498 F.2d 1386, 182 USPQ 370 (Cust. & Pat.App.1974), and *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 177 USPQ 609 (6th Cir.1973). *Danskin* supports appellee's position. There the CCPA affirmed the action of the Trademark Trial and Appeal Board in a trademark opposition proceeding in granting a motion for summary judgment on the ground that the opposer was estopped by a settlement agreement between the parties. Questions were raised about the meaning of the agreement and the board proceeded to construe and apply it. The court approved. That panel of the board apparently had no doubts about being a proper tribunal to construe and apply an agreement. The *Beer Nuts* case, in our view, has no bearing on the ground the board asserted here because it involved the action of a United States District Court in giving effect to an agreement, a court of general jurisdiction.

There are, however, other cases, not cited, which we believe also support appellee's position. In *Knickerbocker Toy Co. v. Faultless Starch Co.*, 467 F.2d 501, 175 USPQ 417 (Cust. & Pat.App.1972), the board granted a motion to strike portions of pleadings in an opposition and two cancellation proceedings because appellant had relied on its copyright on the "Raggedy Ann" doll. The board opined that it "had no jurisdiction to determine the validity of or infringement of a copyright." The CCPA modified the board's action, agreeing that it should strike pleadings insofar as they charged copyright infringement and unfair competition, since these issues were not within the board's jurisdiction to decide, but reversing insofar as the copyright was related to the charges of likelihood of confusion, mistake, or deception from appellee's use of a representation of the copyrighted doll as a trademark by appellee. The court said:

However, we do not wish to be read as holding that the board is * * * precluded from passing on the validity of a copyright if it is necessary to do so in the course of the exercise of its statutory jurisdiction as it may very well be in this case.

As illustrative of the principle being applied, the court's opinion pointed out:

> Although 28 U.S.C. 1338(a) provides that the federal district courts' original jurisdiction over copyright actions "shall be exclusive of the courts of the states," the state courts clearly may pass on the validity of a copyright if it is necessary to do so in the course of deciding a case over which they do have jurisdiction. Nimmer on Copyright § 131.11, "Jurisdiction of Claims Based Upon or Relating to Statutory Copyright" (1971) * * *.

In *American Novawood Corp. v. U.S. Plywood-Champion Papers Inc.*, 426 F.2d 823, 827, 165 USPQ 613, 616 (Cust. & Pat.App. 1970), the court said:

> In a case such as this, the board is obliged to consider which party has the superior rights and to consider all of the relevant facts bearing thereon. Because one decision the board must make is the same as would be made by a court of general jurisdiction in an infringement suit does not mean it is precluded from making it.

Similarly in the present case, although other courts would be the proper tribunals in which to litigate a cause of action for enforcement or breach of the contract here involved, that is not sufficient reason for the board to decline to consider the agreement, its construction, or its validity if necessary to decide the issues properly before it in this cancellation proceeding, including the issue of estoppel.

### III. Standing—The Nonrequirement of "Damage"

As a final matter, and without mention of standing, the board concluded that "petitioner cannot be damaged by the continued existence of respondent's registration

sought to be cancelled because of the subsistence of an unchallenged registration for a substantially identical mark for identical goods." We take it, however, that this damage discussion is directed to the question of standing because that is how appellee argued the standing issue before the board; its memorandum in support of the motion to dismiss stated its first argument to be that "petitioner has no standing since it cannot be damaged." *See* note 2 *supra.*

Historically, there has been much confusion in the cases between standing and damage which recent decisions and opinions have, hopefully, been straightening out. The conclusion is simple—pleading and proof of damage or belief in damage are not necessary to establish standing. *See* Duft, *Opposition to Federal Registration of Trademarks: The Meaning of "Damage",* 64 J.Pat.Off. Soc'y 220 (1982).[6]

In *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 1100–01, 192 USPQ 24, 27 (Cust. & Pat.App.1976), the court said:

> Appellant now argues that opposer, although not barred, has, nonetheless, failed to *prove* that it may be "damaged." Actual "damage" is not mentioned in § 2(d) and is neither a requirement for, nor a guarantee of, a successful opposition on the merits. *American Novawood Corp. v. United States Plywood-Champion Papers, Inc.,* 57 CCPA 1276, 426 F.2d 823, 165 USPQ 613 (1970). Since the concept of "damage" is involved here only because of its mention in § 13 of the Trademark Act of 1946 (15 USC 1063), which provides that "Any person who believes that he would be damaged by the registration of a mark upon the principal register" may oppose, we construe appellant's argument as an allegation that opposer has not demonstrated its standing

to oppose. We must reject this contention. A party has standing to oppose within the meaning of § 13 if that party can demonstrate a *real interest* in the proceeding. *Universal Oil Products Co. v. Rexall Drug and Chemical Co.,* 59 CCPA 1120, 463 F.2d 1122, 174 USPQ 458 (1972). The record shows that opposer is the owner of registered trademarks similar to appellant's HY–TOP for goods identical to some of those described in appellant's application. Opposer's real commercial interest in protecting its registered marks is manifest.

While that case was an opposition, the same is true in cancellations.

The latest discussion of the subject by the CCPA appears in *Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185 (Cust. & Pat.App.1982), which was handed down a few months after the board opinion herein. Standing is exhaustively discussed in the context of a trademark registration cancellation proceeding. The court there stated:

> [S]tanding is a threshold inquiry directed *solely* to establishing the interest of a party.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> No absolute rule can be laid down for what must be proved to establish standing as a petitioner in a cancellation proceeding or as an opposer in an opposition. [Emphasis ours.]

The court noted the comparable language of sections 13 and 14 about *belief* of damage, and then quoted with approval and adopted the *"real interest"* test utilized in *Federated Foods,* supra. "Real interest" has several times been pointed out as a test used to distinguish from mere intermeddlers or, as the board described them, "med-

---

**6.** 37 CFR 2.112 commands that a petition for cancellation "set forth a short and plain statement showing how the petitioner is or will be damaged by the registration." This directive is not, however, reflective of · 15 U.S.C. § 1064, which states that a petition to cancel the registration of a mark may be filed "by any person who *believes* that he is or will be damaged by the registration." (Emphasis ours.) Nor is it

consistent with recent case law, discussed *infra.*

As set forth in Duft, *supra* at 232–34, normally it is the *basis for* a reasonable belief in damage from another's *use* of an alleged mark that is examined to determine the existence of standing (only infrequently is "damage" from "the registration" clear without showing more).

dlesome parties [acting as] self-appointed guardians of the purity of the Register." *Norac Co. v. Occidental Petroleum Corp.,* 197 USPQ 306, 320 (TTAB 1977). *Lipton* notes seven prior cases illustrative of diverse real interests.

In this case, appellant petitioned to cancel appellee's registration of NINA in block letters over eleven years after its issuance. Appellee's other registrations are older still, and 15 U.S.C. § 1064 makes clear that there are limited grounds upon which one may petition to cancel such registrations, which grounds do not include likelihood of confusion. 15 U.S.C. § 1064(c). Thus, notwithstanding that appellee may own another registration for a substantially identical *mark* for substantially identical goods, appellant petitioned to cancel a different *registration,* alleging fraudulent maintenance, apparently because of a present belief that it has grounds to successfully urge only the cancellation of *that* registration.

■ No action with respect to other registrations is required of appellant; it has demonstrated its real interest in the proceeding through its reasonable allegation that its trademark NINO in special script for dance shoes, and the trademark NINA in block letters for ladies' shoes, which shoes flow through the same channels of trade, "are confusingly similar." On the assumption that the board dismissed appellant's petition on the ground that appellant lacked standing, as alleged in appellee's motion to dismiss, that decision of the board is reversed.

### Conclusion

The board's decision granting appellee's motion to dismiss for failure to state a claim upon which relief could be granted is vacated, its decision to dismiss appellant's petition for lack of standing is reversed, and the case is remanded for further proceedings consistent with this opinion.

*VACATED–IN–PART, REVERSED–IN–PART, AND REMANDED.*