98 F.3d 1357
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SM3-87-0061, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 96-5047.
 United States Court of Appeals, Federal Circuit.
 Sept. 16, 1996.
 
 Before ARCHER, Chief Judge, MAYER, and PLAGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 SM3-87-0061 (SM3), a former informant for the Drug Enforcement Administration (DEA), appeals the judgment of the Court of Federal Claims, SM3-87-0061 v. United States, No. 95-710 C (Nov. 8, 1995), dismissing his complaint sua sponte. We reverse and remand the case for further proceedings.
 
 
 2
 "In reviewing the propriety of this dismissal, we take as true the facts alleged ... in [the] complaint." Catawba Indian Tribe v. United States, 982 F.2d 1564, 1568-69 (Fed.Cir.1993). SM3 alleged that from 1987 to 1992, he was an informant with the DEA. He provided information and assistance to the DEA in the arrest of individuals and the seizure and forfeiture of property. Among other activities, he solicited controlled substances from drug traffickers; introduced DEA agents to drug traffickers; participated in reverse-sting operations; and caused large-scale seizures of drugs, money, and property purchased with drug proceeds. Whenever a forfeiture proceeding was based on his assistance, he submitted a request for payment of the maximum amount allowed by law. In all but one case he received either a partial reward or no reward. The following are the amounts he requested and what he received:
 
 
 3
 Case Number or Description Year(s) of Amount Requested Amount
 Investigation Received
----------------------------- --------------- ---------------- -------------
M3"87"2"Z006 1987"92 $250,000 $175,000
M1"90"Z012 1990 $250,000 $175,000 when
 resubmitted
G7"91"0009 1990"91 $175,000 $0
M3"91"Z012 1990"91 $250,000 $80,000
seizure of New York residence 1993 $125,000 no response
 worth approx. $500,000
Houston marijuana trafficker 1989 $50,000 or 25% no response
 of the assets
 seized
New York reverse-sting unspecified $75,000 or 25% no response
 operation of the assets
 seized
arrest of Bolivian 1990 unspecified no response
 organizer-trafficker
 
 
 4
 SM3 filed suit in the Court of Federal Claims in October 1995, seeking $745,000 in actual damages, plus expenses, interest, costs, and attorneys fees, and punitive damages of $10,000,000. He specified that his "work for the Defendants, Department of Justice and DEA, was continually induced by their agents' promises of rewards in the maximum amounts allowable by law...." Compl. count 10. He also alleged that his "work specifically in Count 4 was induced by the very specific promise that he would receive a reward, regardless of forfeiture aspects, solely upon the arrest of the principal target of the investigation." Id.
 
 
 5
 The Court of Federal Claims dismissed on the ground that 28 U.S.C. § 524(c) (1994) is not money-mandating. United States v. Testan, 424 U.S. 392, 401-02 (1976); Huston v. United States, 956 F.2d 259, 261 (Fed.Cir.1992). However, not all of SM3's arguments are based on section 524(c). As noted above, many of SM3's allegations are contractual in nature. Thus, the fact that section 524(c) may not be money-mandating does not justify dismissal of his entire case.
 
 
 6
 The day before the scheduled oral argument in this case, the government requested a remand for the limited purpose of addressing count four of SM3's complaint, in which he alleged that "[a]n oral agreement was made specifically for the payment to SM3 of $250,000.00 upon the arrest of this individual and that plaintiff would be paid an additional amount for seized assets. Only then did SM3 agree to initiate the case." Compl. count 4.
 
 
 7
 We agree with the government that remand is necessary to address this allegation, which, if true, provides a basis for Tucker Act jurisdiction. See 28 U.S.C. § 1491(a)(1) (1994) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States...."). "[T]he issue before us is not whether such a contract should have been, or even was, made, and whether it was or was not performed, but whether he alleged its existence and its terms in a manner that entitles him to his day in court on his claim of breach." Henke v. United States, 60 F.3d 795, 798 (Fed.Cir.1995).
 
 
 8
 We do not agree, however, that the resolution of this issue resolves the entire case. SM3 also alleges contractual agreements in counts 1-3 and 5-9. Indeed, in count 8 of his complaint, SM3 alleges breach of a contract involving his initiation of a case by traveling to Bolivia, meeting with cocaine traffickers, identifying organizational leaders and their governmental associates, and placing himself in significant danger. This activity allegedly resulted in the arrest of a major Bolivian organizer-trafficker, but no asset forfeiture is alleged. Count 9, similarly, does not allege entitlement to a specified amount based on asset forfeiture. At oral argument, SM3's counsel stated that SM3 was promised $250,000 for each of these arrests, regardless of the assets forfeited in connection with them, if any. Thus, SM3's allegations related to these activities are not based on section 524(c). Because we do not know whether there is a valid basis under which such payments could be made, fact-finding on this issue is necessary.
 
 
 9
 The parties similarly could not answer whether payments under section 524(c) or any other authority are always made from appropriated funds. At oral argument, SM3's attorney provided the court with a copy of a form used to make payments for purchase of evidence that indicates that payment can come from three sources: AFF; PE/PI; and Trafficker Directed/Generated Proceeds. AFF presumably refers to the assets forfeiture fund of section 524(c)(1)(B), but there is no evidence in the record about the other two potential sources of payment. Because we cannot speculate whether the same limitations on contracting apply to these other sources of payment, fact-finding is necessary to determine the circumstances under which individuals could contract to provide payment from them.
 
 
 10
 The government says that SM3's contractual arguments were properly dismissed because the "bare allegation" of a personal service contract is insufficient to prevent dismissal under Rule 9(h)(3) of the Rules of the Court of Federal Claims, which requires that a complaint founded on a contract shall include "a description of the contract ... sufficient to identify it." Under the circumstances, we believe SM3 complied with this rule as fully as possible. Where, as here, a complainant alleges an oral agreement, he obviously cannot be expected to "annex to the complaint a copy of the contract." Moreover, by alleging an oral agreement, SM3 implicitly alleges an offer and acceptance by parties competent to contract. The government's argument to the contrary hearkens back to the days prior to the Federal Rules of Civil Procedure, when pleading was "a game of skill in which one misstep by counsel may be decisive to the outcome." Conley v. Gibson, 355 U.S. 41, 48 (1957); McClary v. United States, 775 F.2d 280, 283 (Fed.Cir.1985).
 
 
 11
 After the record is developed on these issues, it may be that SM3 will not be able to establish everything that he alleges. That is not our concern at this stage. "However correct the conclusion below may be in the end, we cannot allow the shaving of principles for expediency...." Selva & Sons, Inc. v. Nina Footwear, Inc., 705 F.2d 1316, 1322 (Fed.Cir.1983) (quoting Davis v. Howard, 561 F.2d 565, 572 (5th Cir.1977)).