THIS ORDER IS A
PRECEDENT OF THE
TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451
General Contact Number: 571-272-8500

wbc

Mailed:  August 8, 2017

Opposition No. 91230600

*Yufan Hu*

*v.*

*TJ Food Service, LLC*

**Wendy Boldt Cohen, Interlocutory Attorney:**

TJ Food Service, LLC ("Applicant") previously filed a motion to dismiss Yufan Hu's ("Opposer") notice of opposition for failure to state claims of non-ownership and likelihood of confusion, and for lack of Board jurisdiction and/or venue based on the parties' prior contractual agreement and arbitration clause.[1] After denying the motion to dismiss in part as to failure to state a claim, the Board allowed the parties time to brief the motion to dismiss for lack of Board jurisdiction and/or venue as a motion for summary judgment.[2] This case now comes before the Board on that motion.[3] The motion is fully briefed.[4]

---

[1] 6 TTABVUE, *Applicant's Motion to Dismiss.*
[2] 13 TTABVUE 4, *Board's Order.*
[3] 14 TTABVUE, *Applicant's Motion for Summary Judgment.*
[4] Opposer's motion to substitute counsel is noted and made of record. 17 TTABVUE, *Opposer's Appearance of Attorney*; 18 TTABVUE, *Opposer's Motion to Substitute Counsel.*

## Background

An operating agreement between Applicant, Opposer, and a third party,[5] as members of WNH Food Service LLC, was executed on February 18, 2015. Pertinent to the dispute at hand is Section 8.16 of that agreement, which reads:

> Any dispute, claim or controversy among the Members or between a Member and the Company arising out of or related to this agreement shall be settled by arbitration in Tippecanoe County, Indiana. Such arbitration shall be conducted by a single arbitrator in accordance with the rules of The American Arbitration Association, and judgment may be entered upon the award rendered and enforced by appropriate judicial action. Unless otherwise allocated by the arbitrator, the losing party shall bear any fees and expenses of the arbitrator, other arbitration fees and expenses, reasonable attorney's fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by him or the prevailing party. BY EXECUTING THIS AGREEMENT YOU ARE AGREEING TO HAVE CERTAIN DISPUTES DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE SUCH DISPUTES LITIGATED IN A COURT OR JURY TRIAL. BY EXECUTING THIS AGREEMENT YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

The principal question is the effect of this arbitration clause on the Board's power to hear this trademark registration dispute concerning the LATEA mark.

---

[5] Yimei Wan, an individual.

**Analysis**

The Board is an administrative tribunal with jurisdiction over the question of registrability of U.S. trademarks.[6] *See* Trademark Act § 17, 15 U.S.C. § 1067. The Board is empowered to determine *only* the right to register. Trademark Act §§ 17-18, 20, 24; Trademark Act § 18, 15 U.S.C. §§ 1067-68, 1070, 1092; *see also, e.g., Conolty v. Conolty O'Connor NYC LLC*, 111 USPQ2d 1302, 1309 (TTAB 2014). However, the Board may consider the terms of a contract if, and to the extent that, construction of the contract is necessary to a decision on matters within the Board's jurisdiction. *See Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 217 USPQ 641, 647 (Fed. Cir. 1983); *M-5 Steel Mfg. Inc. v. O'Hagin's Inc.*, 61 USPQ2d 1086, 1094-95 (TTAB 2001). In that context, the Board may, in the exercise of its statutory jurisdiction, consider an agreement, its construction, or its validity, "although other courts would be the proper tribunals in which to litigate a cause of action for enforcement or breach of [that] contract." *Selva & Sons, Inc.,* 217 USPQ at 647.

Applicant argues in its motion for summary judgment that the Board proceeding should be dismissed because the parties are subject to an arbitration clause; that the arbitration clause requires arbitration for "[a]ny dispute, claim or controversy among the Members"; that the ownership and likelihood of confusion claims before the Board

---

[6] While the Board has jurisdiction to determine the registrability of trademarks, it does not have exclusive jurisdiction in all circumstances. *See, e.g.,* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.").

involve a dispute among the Members; and that therefore the Board does not have jurisdiction to consider the dispute.[7]

Opposer argues that "the immediate dispute is regarding ownership of intellectual property … which is never contemplated in the WNH Operating Agreement"; that use of the trademark at issue is contemplated in a separate agreement; and that the Board has the exclusive jurisdiction to determine registrability.[8] Opposer concludes, "[t]hus a dispute between the WNH Members regarding the registration of the Mark must necessarily be brought before the TTAB and could not be determined by an arbitrator."[9]

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides:

> A written provision in any …contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The Supreme Court has observed that "'the preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered,'

---

[7] 14 TTABVUE 7-9, *Applicant's Motion for Summary Judgment*. We note that the arbitration clause cannot itself divest a court or administrative tribunal of its authority (or "jurisdiction") over a dispute. But it can require such a forum to stay a proceeding in light of an agreement to arbitrate issues that otherwise are before the forum. *See, e.g.*, *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 903 (D.C. Cir. 1998) (FAA contemplates that court action will be stayed pending arbitration and that such stay "does not oust the court's jurisdiction of the action, though the parties have agreed to arbitrate") (citing, *inter alia*, *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 44 (1944)). We therefore interpret Applicant's motion as requesting a stay pending arbitration, rather than dismissal.

[8] 15 TTABVUE 8-9, *Opposer's Response to the Motion for Summary Judgment*.

[9] 15 TTABVUE 9, *Opposer's Response to the Motion for Summary Judgment*.

a concern which 'requires that we rigorously enforce agreements to arbitrate.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 625-26 (1985) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221 (1985)). At bottom is the policy "guaranteeing the enforcement of private contractual arrangements: the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" *Mitsubishi Motors Corp.,* 473 U.S. at 625 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23 (1983)). Thus, when considering if a dispute should be arbitrated, the Board must first consider whether the parties agreed to arbitrate the dispute. *See Mitsubishi Motors Corp.*, 473 U.S. at 626. In so doing, the Board will follow the principle that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25. After finding an agreement to arbitrate, the Board must then turn to "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 628.

### *The Parties' Arbitration Provision is Broad and Encompasses the Issue of Ownership.*

Here, the parties admit that they have signed an agreement to arbitrate but disagree as to whether the claims before the Board are a "dispute" as contemplated by the arbitration clause. The dispute as articulated by the parties centers on the issue of ownership and we address arbitrability solely with regard to that issue. The arbitration clause in the WNH Food Service, LLC operating agreement broadly reads that "[a]ny dispute, claim or controversy among the Members or between a Member and the Company arising out of or related to this agreement shall be settled by

arbitration." Opposer asserts that "Applicant contributed the LaTea intellectual property to WNH in exchange for a minority equity interest in WNH. This intellectual property included recipes and co-ownership in the LaTea brand."[10] In response to a similar allegation in the Notice of Opposition, Applicant maintains that it granted "a nonexclusive license to WNH to use the LaTea Trademark and proprietary information in exchange for a controlling interest in WNH."[11] The issue then is not whether Applicant contributed an interest of some kind in the mark at issue to become a member of the company but whether its contribution amounted to an ownership interest in the mark.

Because the operating agreement authorizes a member's contribution of "any combination of cash, property, labor, or services" to obtain an equity position in the company,[12] and because Applicant's contribution to WNH was made pursuant to the operating agreement, the issue of the nature of Applicant's contribution, which gives rise to Opposer's claim that Applicant does not own the mark, arguably falls within the purview of the arbitration clause in the operating agreement, which governs "[a]ny dispute, claim or controversy among the Members or between a Member and the Company arising out of or related to this agreement … ."[13] Moreover, with respect

---

[10] 15 TTABVUE 13, *Declaration of Yufan Hu* at ¶ 7. Yufan Hu is identified as an equity member of Applicant and General Manager and equity member of WNH Food Service, LLC.
[11] 7 TTABVUE 4, *Applicant's Answer to Notice of Opposition.*
[12] 14 TTABVUE 17, *Exh. A to Applicant's Motion for Summary Judgment.*
[13] The issue of the arbitrability of the dispute may itself be considered and determined by the arbitrator. *See American Arbitration Assoc. Rules for Commercial Arbitration* ("AAA Rules"), Rule 7(a) (Oct. 2013) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."). Here, the parties' arbitration clause incorporates the AAA Rules as follows: "Such arbitration shall be

to claims regarding ownership rights, the parties' agreement does not specifically exclude Lanham Act claims, or any statutory claims for that matter, from the scope of agreement to arbitrate. To the contrary, the parties' agreement appears to be expansive, covering "[a]ny dispute, claim or controversy … arising out of or related to" it. Accordingly, the Board is not persuaded that the parties' ownership dispute is excepted from the arbitration clause.

### *Ownership of a Trademark Can Be Arbitrated*

As to whether "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991), we at the outset note that administrative proceedings are not necessarily exempt from application of the FAA. The U.S. Supreme Court has enforced arbitration provisions even where there is, as here, a statute enabling a federal administrative agency to resolve the dispute. *See Gilmer,* 500 U.S. 20 (the requirement that an age discrimination claim be filed with the Equal Employment Opportunity Commission as a precursor to private litigation does not override compulsory arbitration when the dispute is subject to the FAA); *see also Preston v.*

---

conducted by a single arbitrator in accordance with the rules of The American Arbitration Association." Accordingly, the parties have shown their clear and unmistakable intent to delegate the arbitrability question to an arbitrator. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986) (Courts should not find that parties agreed to arbitrate the question of arbitrability "[u]nless the parties clearly and unmistakably provide otherwise."); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1374, 80 USPQ2d 1669, 1675 (Fed. Cir. 2006) ("parties clearly and unmistakably intended to delegate arbitrability questions to an arbitrator as evidenced by their incorporation of the AAA Rules"); *Terminix Int'l Co. v. Palmer Ranch LP,* 432 F.3d 1327, 1332 (11th Cir.2005); *Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 208 (2d Cir.2005); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F2d 1263, 1272 (7th Cir. 1976); *Gilman v. Walters*, 61 F.Supp.3d 794, 800 (S.D. Ind. 2014).

*Ferrer*, 552 U.S. 346 (2008) (an agreement to arbitrate a contract dispute governed by the FAA supersedes state law that lodges primary jurisdiction of the dispute with the California Labor Commissioner).

In such cases, the Supreme Court has explained, the focus is on the intention of Congress:

> Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. In this regard, we note that the burden is on [the party resisting arbitration] to show that Congress intended to preclude a waiver of a judicial forum for [such] claims. If such an intention exists, it will be discoverable in the text of the [statute at issue], its legislative history, or an "inherent conflict" between arbitration and the [statute]'s underlying purposes. Throughout such an inquiry, it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.

*Gilmer*, 500 U.S. at 26 (citations and internal quotation marks omitted; bracketed material added).

Turning next to Congress's intent as expressed by the text of the Lanham Act, we note that the Board has statutory authority to determine the right to register marks but that the Lanham Act does not contain language expressly exempting any registrability determinations from being decided in arbitration. *See* Trademark Act §§ 13, 14, 17 and 18.

The question presented in this case is whether Applicant transferred any ownership rights in the subject mark to WNH when it relied on the value of the mark as part of its capital contribution. Because one cannot register a mark that it does not own, the ownership issue is central to deciding the registrability of the mark in

8

dispute. *See, e.g., Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 189 USPQ 630, 635 n.6 (CCPA 1976); *Meem-Haskins Coal Corp. v. Cent. Fuel Corp.*, 137 F.2d 242, 58 USPQ 605, 609 (CCPA 1943); *Wonderbread 5 v. Gilles*, 115 USPQ2d 1296 (TTAB 2015); *Great Seats, Ltd. v. Great Seats, Inc.*, 84 USPQ2d 1235, 1239 (TTAB 2007). Accordingly, the issue of whether the WNH Operating Agreement is determinative of ownership rights in the mark is arbitrable.

## Conclusion

Accordingly, we deem it appropriate to honor the parties' agreement to arbitrate disputes among its members arising under the operating agreement as to who owns the mark (a question turning on the parties' intent). Thus, we will maintain the current suspension to afford either party the opportunity to commence arbitration on the issue of whether the parties' ownership dispute falls under the purview of the arbitration clause in the operating agreement and, if so, to reach a decision on the issue of ownership of the mark in question under that agreement.

\*   \*   \*

The parties are allowed **60 DAYS from the mailing date of this order** to notify the Board that an arbitration proceeding on the non-ownership claim has been commenced, failing which the Board will resume these proceedings.[14]

In the event arbitration occurs, the parties are ordered to report promptly to the Board the decision of the arbitrator on the arbitrability and ownership issues so that the Board may determine how the opposition may proceed thereafter.

---

[14] The Board does not have the authority to order the parties to initiate an arbitration proceeding.

Proceedings otherwise remain suspended.