Harold S. HEMSTREET,
Plaintiff–Appellee,

v.

SPIEGEL, INC., Defendant,

Recognition Equipment Incorporated,
Defendant–Appellant.

No. 88–1152.

United States Court of Appeals,
Federal Circuit.

July 7, 1988.

Leonard M. Ring, Leonard M. Ring and Associates, Chicago, Ill., argued for plaintiff-appellee. With him on the brief was Edward D. Manzo, Jenner and Block, Chicago, Ill.

John W. Stack, Winston and Strawn, Chicago, Ill., argued for defendant-appellant. With him on the brief was Edward J. Wendrow.

Before FRIEDMAN, RICH and NEWMAN, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the Northern District of Illinois that refused to relieve the appellant of its obligation under the court's prior order settling a patent infringement suit to make royalty payments to the appellee. We affirm.

I

In 1977, the appellee Hemstreet filed a patent infringement suit against Spiegel, Inc. (which no longer is in the case) and the appellant Recognition Equipment, Inc. (REI).

After the case had been on trial for a week, the parties settled it. The settlement was memorialized in a "Settlement Order," dated July 13, 1981, which both the district court and counsel for the parties signed.

The terms of the settlement were that Hemstreet "agreed to forego conclusion of this trial to verdict before the jury in return for" REI "taking a license under the patents-in-suit" and that Hemstreet "agreed to accept payment for said license over a term of years," as set forth in a confidential license agreement which was made part of the settlement order,

on condition that REI agrees to make said payments as they become due notwithstanding that said patents-in-suit may be held invalid and/or unenforceable in any other proceeding at a later date[.]

The settlement order dismissed the action and stated that "the issues of validity, enforceability and infringement of" the patents in suit "are hereby finally concluded and disposed of." The court retained jurisdiction "for the purpose of entering a money judgment for any amount not paid by REI on the scheduled date of payment set forth in Section 4 of the Agreement."

In November 1987, REI filed in the district court a petition seeking an order "relieving it from making any further payments under said Settlement Order." The petition stated that on January 30, 1987, in *Hemstreet v. Burroughs Corp.*, 666 F.Supp. 1096, 2 USPQ2d 1001 (N.D.Ill.), the district court had granted summary judgment that the patents involved in the REI case were unenforceable because of Hemstreet's inequitable conduct before the United States Patent and Trademark Office. REI urged that "it would no longer be equitable to give the Settlement Order prospective application requiring future payments from REI to plaintiff based upon plaintiff's unenforceable patents."

The district court denied REI's petition. The court held that under decisions of the Seventh Circuit "a judgment order of a court in a patent infringement case is conclusive on the parties and has *res judicata* effect where it adjudges both validity and infringement." The court concluded:

The Settlement Order entered by this court on July 13, 1981 addressed validity, infringement, and unenforceability. It was signed by the parties and their lawyers, and it was approved by the court. The suit was dismissed in reliance thereon. It is a judicial disposition entitled to *res judicata* effect and cannot be set aside even though another court in another case later found the patents to be unenforceable or invalid.

II

The parties vigorously dispute whether the settlement order adjudicated the validity and infringement of the patents and therefore whether, under Seventh Circuit decisions, the settlement order constituted

*res judicata* of the patent enforceability issue. We find it unnecessary to decide that question, however, because we conclude that the provision of the settlement order requiring REI to make the payments without regard to any subsequent determination of the validity or enforceability of the patent bars the relief REI now seeks.

A. Under the settlement, "REI agree[d] to make said payments as they become due notwithstanding that said patents-in-suit may be held invalid and/or unenforceable in any other proceeding at a later date[.]" The possibility REI contemplated has come to pass. The patents were held unenforceable in "[an]other proceeding at a later date." REI committed itself to make the payments even if that happened. Now that the event has happened, REI seeks to escape its commitment. It cannot do so.

The law strongly favors settlement of litigation, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into. *Bergh v. Department of Transp.*, 794 F.2d 1575, 1577 (Fed.Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986). REI makes no claim that this settlement was involuntary or tainted by fraud. *Asberry v. United States Postal Service*, 692 F.2d 1378, 1380 (Fed.Cir.1982) (" 'One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.' ") (quoting *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948)). The settlement presumably reflected REI's judgment, made after the case had been on trial for a week, that REI's interest would best be served by settling the case upon the terms to which it agreed (including its agreement to make the payments even if the patents subsequently were held invalid or unenforceable), rather than to continue the trial to the jury verdict.

For almost six years after the settlement, REI made the payments it had agreed to make. It now seeks to avoid its obligation on the sole ground that, because in a subsequent case the patents were held unenforceable, it should not be required to pay for rights under unenforceable patents. Having specifically voluntarily agreed to make the payments even if the patents subsequently were held unenforceable, it ill behooves REI to renege on that commitment merely because the situation it contemplated has occurred. To permit REI thus to escape its obligation under the settlement would seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of settlements generally. *See Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372, 190 USPQ 392, 395 (6th Cir.) (Markey, *C.J.*), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976) ("Settlement is of particular value in patent litigation, the nature of which is often inordinately complex and time consuming. Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.").

B. REI points to *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), in which the Supreme Court held that a patent licensee could challenge the validity of the licensed patent. The Court stressed "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." 395 U.S. at 670, 89 S.Ct. at 1911. The Court also held that the licensee was not required to continue to pay royalties under the license while it was challenging the validity of the patent, because "such a requirement would be inconsistent with the aims of federal patent policy." 395 U.S. at 673, 89 S.Ct. at 1912. REI contends that it also would be inconsistent with federal patent policy to require it to continue to pay royalties for a license under a patent that has been held unenforceable.

*Lear*, however, did not involve a settlement of litigation, but only the right of a patent licensee to challenge the validity of the licensed patent. The enforcement of settlement of litigation involves another public policy totally absent in *Lear:* the encouragement of settlement of litigation and the need to enforce such settlements in order to encourage the parties to enter into them.

In *Ransburg Electro–Coating Corp. v. Spiller and Spiller, Inc.,* 489 F.2d 974 (7th Cir.1973), an accused infringer had settled a patent infringement suit by making payments for past infringement. The court rejected the infringer's contention that "enforcement of the settlement agreement would be contrary to the federal patent policy enunciated in *Lear* of ridding the public of invalid patents thereby dedicating ideas to the common good." 489 F.2d at 977. The court pointed out that

> [the infringer contended that] the federal patent policy, as enunciated in *Lear*, that "all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent," prevails over the policy favoring settlement of disputes. Although the federal patent policy prevails over "the technical requirements of contract doctrine" (395 U.S. at 670, 89 S.Ct. at 1911), we believe that such policy must occupy a subsidiary position to the fundamental policy favoring the expedient and orderly settlement of disputes and the fostering of judicial economy. To allow a subversion of the deeply instilled policy of settlement of legitimate disputes by applying the federal patent policy as enunciated in *Lear* would effectively strip good faith settlements of any meaning. The vehicle of settlement would be a useless item if contracts, such as the one here, were subject to invalidation after they were consummated. We think the federal patent policy should *not* be carried so far.

*Id.* at 978.

These words are equally applicable to the present case. REI cannot rely on federal patent policy to avoid its settlement commitment that it would continue to make the payments specified in the settlement agreement "notwithstanding that said patents-in-suit may be held invalid and/or unenforceable in any other proceeding at a later date."

## CONCLUSION

The order of the district court is AFFIRMED.