99 F.3d 1160
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.Sheree FOSTER, Petitioner,v.MERIT SYSTEMS PROTECTION BOARD, Respondent.
 No. 96-3212.
 United States Court of Appeals, Federal Circuit.
 Oct. 25, 1996.
 
 Before ARCHER, Chief Judge, PLAGER, and SCHALL, Circuit Judges.
 DECISION
 ARCHER, Chief Judge.
 
 
 1
 Sheree Foster appeals the decision of the Merit Systems Protection Board (MSPB or board), AT-O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-I-1, dismissing her appeal as having been settled. We affirm.
 
 BACKGROUND
 
 2
 Foster resigned from her position as a secretary with the Federal Aviation Administration in Miami, Florida, effective February 4, 1995. On February 24, 1995, she appealed to the board asserting that her resignation was involuntary. On March 1, 1995, the administrative judge (AJ), noting that the board has jurisdiction over Foster's appeal only if her resignation was involuntary and that resignations are presumed to be voluntary, ordered Foster to file evidence and argument, within twenty days, proving that her resignation was involuntary.
 
 
 3
 In response, Foster filed an "Amendment" on March 6, 1995, and a "Brief" on April 10, 1995. In her Amendment, Foster alleged that her resignation was the result of duress, coercion, and misrepresentation. Specifically, she asserted that because she was restricted and restrained from performing her duties as a secretary, she was coerced and under duress. She also asserted that the agency's failure to implement certain performance plans amounted to a misrepresentation. In her Brief, Foster added that she was the recipient of verbal abuse and reiterated that she was prevented from performing her duties as a secretary. Foster also asserted that she had been passed over for positions in another office because of untrue and unsubstantiated derogatory remarks.
 
 
 4
 The AJ then conducted a telephonic pre-hearing conference, at which time the parties reached a settlement. According to the AJ, the specific terms of the settlement were discussed during the conference. However, after the parties failed to file any settlement agreement with the board, the AJ held another telephonic conference on June 14, 1995. During this conference, Foster stated that, while she had received the settlement agreement, she had not yet signed it because she still believed that she had resigned against her will. At the same time, however, the AJ said that Foster did not disagree with any terms of the agreement and indicated that she was going to sign the agreement. The AJ then instructed Foster to sign the agreement and return it to the board.
 
 
 5
 After the agency representative informed the AJ that Foster had returned the settlement agreement unsigned, the AJ issued an order to Foster, on June 21, 1995, to show cause as to why the appeal should not be dismissed as settled. The AJ stated that Foster did not dispute that she had agreed to enter into a settlement agreement and to the terms of that agreement and found that the unsigned settlement agreement accurately reflected those terms. In conclusion, the AJ found that the parties had entered into a binding agreement which could only be set aside if it was unlawful, involuntary, or the result of fraud or mutual mistake.
 
 
 6
 Foster never responded to the AJ's show cause order. However, on the same day that the AJ issued the show cause order, Foster filed a paper restating her belief that she was forced to resign and requested that the AJ decide her appeal. Significantly, Foster did not dispute the existence of an agreement or the terms of the agreement. In an order dated June 27, 1995, the AJ found that a lawful agreement existed, that Foster understood the terms of the agreement and that she had entered into it freely and voluntarily, and the AJ, accordingly, dismissed Foster's appeal. The decision of the AJ became final on March 28, 1996, when Foster withdrew her petition for review by the full board.
 
 DISCUSSION
 
 7
 Our review of the board's decision is limited. We must affirm the board's decision unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994).
 
 
 8
 The AJ found that Foster had entered into an oral agreement to settle this dispute and that the terms of the agreement were certain. Foster does not dispute the existence of an agreement or its terms and, therefore, the AJ's conclusion that a binding agreement existed is supported by substantial evidence. Foster alleges on appeal that she was under stress when she entered into the settlement agreement. This argument fails for two reasons. First, a settlement agreement may only be set aside if it was entered into involuntarily or was the result of fraud or mutual mistake, see Hemstreet v. Spiegel, Inc., 851 F.2d 348, 350 (Fed.Cir.1988), and "stress" does not amount to involuntariness, fraud or mutual mistake. Second, Foster never made this argument to the AJ--she never responded to the AJ's order to show cause as to why the settlement agreement was not binding--and, as a result, it cannot be made for the first time on appeal.