# United States Court of Appeals for the Federal Circuit

---

**AUSTRALIAN THERAPEUTIC SUPPLIES PTY. LTD.,**
*Appellant*

**v.**

**NAKED TM, LLC,**
*Appellee*

---

2019-1567

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92056381.

---

## ON PETITION FOR REHEARING EN BANC

---

SUZANNE D. MEEHLE, Meehle & Jay PA, Orlando, FL, filed a petition for rehearing en banc for appellee. Also represented by EMILY BEHZADI, DAVEY T. JAY; TANIA WILLIAMS, The Williams Firm, P.A., West Palm Beach, FL.

JAMES ROBERT MENKER, Holley & Menker, P.A., Atlantic Beach, FL, filed a response to the petition for appellant.

CHARLES L. THOMASON, Thomason Law Office, Louisville, KY, amicus curiae, pro se.

———————————

Before PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

WALLACH, *Circuit Judge*, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

# O R D E R

Appellee Naked TM, LLC filed a petition for rehearing en banc. A response to the petition was invited by the court and filed by Appellant Australian Therapeutic Supplies Pty. Ltd. A motion for leave to file an amicus brief was filed by Lee Thomason and granted by the court. The petition for rehearing, response, and amicus brief were first referred to the panel that heard the appeal, and thereafter, to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will issue on December 11, 2020.

FOR THE COURT

December 4, 2020                /s/ Peter R. Marksteiner
Date                           Peter R. Marksteiner
                               Clerk of Court

# United States Court of Appeals
# for the Federal Circuit

---

**AUSTRALIAN THERAPEUTIC SUPPLIES PTY. LTD.,**
*Appellant*

**v.**

**NAKED TM, LLC,**
*Appellee*

---

2019-1567

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92056381.

---

WALLACH, *Circuit Judge*, dissenting from denial of a petition for rehearing *en banc*.

I write to express my disagreement with the merits of the decision in *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC* (*Australian III*), 965 F.3d 1370 (Fed. Cir. 2020), and to note a potential point of confusion in our case law going forward. Statutory standing is a question of "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.,* 572 U.S. 118, 127 (2014).[1] A cause of action "extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Id.* at 129 (internal quotation marks and citation omitted). *Australian III* concerns how broad the "zone of interests" is for 15 U.S.C. § 1064—specifically, whether a prior settlement agreement may preclude a petitioner from establishing a valid cause of action. *Compare Australian III*, 965 F.3d at 1374–76 (concluding that a petitioner had a valid cause of action because "proprietary rights" are not required), *with Australian III*, 965 F.3d at 1376–81 (Wallach, J. dissenting) (concluding that a petitioner did not have a valid cause of action because it was precluded by a prior settlement agreement). *See* 15 U.S.C. § 1064 (providing for cancellation of registration of a trademark).

---

[1]    There is some variation, evidenced in our recent jurisprudence and the briefing here, as to whether this inquiry, formerly an issue of "prudential standing," is called "statutory standing" or, alternatively, a "cause of action" requirement. In *Lexmark*, the Supreme Court noted that it has "on occasion referred to this inquiry as 'statutory standing,'" and, while the term is "an improvement over the language of 'prudential standing,' since it correctly places the focus on the statute," it is imperfect since whether a plaintiff has "a valid . . . cause of action does not implicate subject-matter jurisdiction[.]" *Lexmark,* 572 U.S. at 128 n.4. Following *Lexmark*, the Supreme Court has identified this inquiry as one of "statutory standing" or a "cause of action" requirement. *See, e.g.*, *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302–05 (2017) (referring to "statutory" standing, "prudential standing," and "the 'cause-of-action' . . . requirement"). Both terms stand for the same inquiry, i.e., "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark,* 572 U.S. at 127.

*Australian III*: (1) conflicts with our case law requiring a "legitimate commercial interest" to have a valid cause of action under 15 U.S.C. § 1064, *see Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014) (following *Lexmark*, noting that a petitioner must have a "legitimate commercial interest sufficient to confer standing"); (2) undermines our case law favoring the enforcement of settlement agreements, *see Wells Cargo, Inc. v. Wells Cargo, Inc.*, 606 F.2d 961, 965 (C.C.P.A. 1979) ("If there [is] a policy favoring challenges to trademark validity, it too has been viewed as outweighed by the policy favoring settlements."); and (3) raises questions as to the impact of Supreme Court precedent on our statutory standing jurisprudence, *see Lexmark*, 572 U.S. at 128 n.4 (noting that statutory standing does not implicate Article III subject matter jurisdiction), 134 (providing "a direct application of the zone-of-interests test and the proximate-cause requirement [to] suppl[y] the relevant limits on who may sue"). Accordingly, I respectfully dissent from our denial of rehearing en banc. *See* FED. R. APP. P. 35(a)(1)–(2).

## BACKGROUND

### I. Legal Framework

Statutory standing is a question of "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark,* 572 U.S. at 127.[2] A cause of action "extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Id.* at 129 (internal quotation marks and citation omitted). Under the relevant statute, "a direct application of the zone-of-interests test and the proximate-cause

---

[2]    *Lexmark* concerned another Lanham Act provision, specifically 15 U.S.C. § 1125(a). *Lexmark,* 572 U.S. at 134 (citing 15 U.S.C. § 1125(a)); *see* 15 U.S.C. § 1125(a) (providing for a cause of action for false advertising).

requirement supplies the relevant limits on who may sue." *Id.* at 134. "[T]he breadth of the zone of interests varies according to the provisions of law at issue[.]" *Id.* at 130.[3]

Relevant here, "[a] petition to cancel a registration of a mark . . . may . . . be filed . . . by any person who believes that he is or will be damaged . . . by the registration of a mark[.]" 15 U.S.C. § 1064. In *Empresa Cubana*, we explained that, in keeping with *Lexmark*, we must "focus[] on [a petitioner's] entitlement to the cause of action defined by 15 U.S.C. § 1064," *Empresa Cubana*, 753 F.3d at 1274, and confirmed the continued applicability of our pre-*Lexmark* 15 U.S.C. § 1064 jurisprudence to determine whether "[a] petitioner is authorized by statute to seek cancellation of a mark," *id.* at 1275. Under *Empresa Cubana*, a petitioner must show that "it has both a real interest in the proceedings . . . [and] a reasonable basis for its belief of damage" to

---

[3]    For example, "in the [Administrative Procedure Act ('APA')] context . . . the test is not 'especially demanding,'" as a "lenient approach is an appropriate means of preserving the flexibility of the APA's omnibus judicial-review provision." *Id.* (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)). What satisfies "the 'generous review provisions' of the APA," however, "may not [be enough] for other" statutes. *Id.* (quoting *Bennett v. Spear,* 520 U.S. 154, 163 (1997)). For the Lanham Act, while its often "broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III," the Supreme Court considered it "unlikel[y] that Congress meant" for the Lanham Act to "get such an expansive reading," *Lexmark,* 572 U.S. at 129 (internal quotation marks and citation omitted), and instead looked to the "unusual, and extraordinarily helpful, detailed statement of the [Lanham Act's] purposes" as codified at 15 U.S.C. § 1127," *id.* at 131 (internal quotation marks and citation omitted).

have a valid cause of action under 15 U.S.C. § 1064. *Id.* (internal quotation marks and citation omitted); *see Australian III*, 965 F.3d at 1373–74 (similar). Recently, we clarified both that "the *Lexmark* analytical framework is the applicable standard for determining whether a person is eligible under 15 U.S.C. § 1064 to bring a petition for the cancellation of a trademark registration," and that there is "no meaningful, substantive difference between the analytical frameworks expressed in *Lexmark* and *Empresa Cubana*." *Corcamore, LLC v. SFM, LLC*, No. 2019-1526, 2020 WL 6277728, at *3 (Fed. Cir. Oct. 27, 2020); *see id.* at *5 (explaining that "[t]he zone-of-interests requirement and the real-interest requirement share a similar purpose and application" and "a party that demonstrates a reasonable belief of damage by the registration of a trademark demonstrates proximate causation within the context of [15 U.S.C.] § 1064").[4]

---

[4]    Since *Empresa Cubana*, this court has continued to apply our pre-*Lexmark* case law to satisfy *Lexmark*'s statutory zone-of-interests test. *See, e.g.*, *Kaszuba v. Iancu*, 823 F. App'x 973, 978 (Fed. Cir. 2020); *Bank v. Al Johnson's Swedish Rest. & Butik, Inc.*, 795 F. App'x 822, 823 (Fed. Cir. 2019); *Australian III*, 965 F.3d at 1374. The U.S. Patent and Trademark Office ("USPTO") Trademark Trial and Appeal Board (the "TTAB") has relied on this continuity. *See, e.g.*, *Seeley Int'l Pty. Ltd.*, No. 91246790, 2020 WL 6306117, at *2 n.18 (T.T.A.B. Oct. 26, 2020) ("Our decisions have previously analyzed the requirements of . . . 15 U.S.C. §§ 1063–64, under the rubric of 'standing.' We now refer to this inquiry as entitlement to a statutory cause of action. Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting [15 U.S.C. §§ 1063–64] remain applicable."); *Ethika, Inc.*, No. 9206368, 2020 WL 6306141, at *5 (T.T.A.B. Oct. 26, 2020) ("To establish entitlement to a

Whether we adopt *Empresa Cubana*'s or *Corcamore*'s language, a petitioner needs a legitimate commercial interest to have a valid cause of action under 15 U.S.C. § 1064. *Corcamore,* 2020 WL 6277728, at \*3; *Empresa Cubana*, 753 F.3d at 1275; *see Lexmark*, 572 U.S. at 131–32 (explaining that the "interests protected by the Lanham Act" are "commercial," including "'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition'" (alterations in original) (quoting 15 U.S.C. § 1127)).[5]

---

statutory cause of action under [15 U.S.C. § 1064], such as a cause of action for likelihood of confusion, a plaintiff must demonstrate a real interest in the proceeding and a reasonable belief of damage." (citing, inter alia, *Australian III*, 965 F.3d at 1374; *Empresa Cubana*, 753 F.3d at 1275)). *Corcamore* clarifies that *Empresa Cubana* and our pre-*Lexmark* case law are in keeping with *Lexmark*. *See Corcamore*, 2020 WL 6277728, at \*5 ("[W]e see no meaningful, substantive difference in the analysis used in *Lexmark* and *Empresa Cubana*."). *Corcamore* cannot, however, be read to overrule *Empresa Cubana* or its reading of *Lexmark*. *See Deckers Corp. v. United States*, 752 F.3d 949, 964 (Fed. Cir. 2014) ("[A] panel of this court—which normally sits in panels of three, and not en banc—is bound by the precedential decisions of prior panels unless and until overruled by an intervening Supreme Court or en banc decision.").

[5]    The Supreme Court noted that "[i]dentifying the interests protected by the Lanham Act . . . requires no guesswork, since the [Lanham] Act includes an unusual, and extraordinarily helpful, detailed statement of the statute's purposes." *Lexmark*, 572 U.S. at 131 (internal quotation marks and citation omitted).  Specifically:

The intent of [the Lanham Act] is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks

"In the usual case, where [a cancellation] is brought under [15 U.S.C. § 1052(d)], the [petitioner] ha[s] a proprietary interest in [the] mark [at issue], and standing is afforded through its assertion that it will incur some direct injury to its own established trade identity." *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987) (discussing statutory standing to oppose, under 15 U.S.C. § 1063, registration of a mark)[6]; *see* 15 U.S.C. § 1052(d) (providing that a mark may not be registered "on the principal register" if it "so resembles a mark registered in the [USPTO], or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion").  However, a valid cause of action "can [also] be shown by establishing a direct commercial interest," *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) (citing *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1092

---

in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127.

[6]    "The linguistic and functional similarities between the opposition and cancellation provisions of [15 U.S.C. §§ 1063, 1064] mandate that we construe the requirements of these provisions consistently." *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998).

(Fed. Cir. 1984)), such as the "longtime production and sale of merchandise with the [mark]" at issue, with "an equal right" to that of registrant-approved retailers "to use the [mark]," *Job's Daughters*, 727 F.2d at 1092, or "own[er]s[hip]" and use of potentially similar "prior registrations," *Cunningham*, 222 F.3d at 945.

Whatever commercial interest the petitioner asserts, it must be "legitimate." *Empresa Cubana*, 753 F.3d at 1275; *see Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 1376 (Fed. Cir. 2012) (requiring "a legitimate personal interest" (internal quotation marks and citation omitted)); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029 (C.C.P.A. 1982) (similar); *cf. Lexmark*, 572 U.S. at 131–32 (providing that the "interests protected by the Lanham Act" include "'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition'" (alterations in original) (quoting 15 U.S.C. § 1127)). Further, it must be rooted in "fact[]" and "affirmatively proved." *Ritchie v. Simpson*, 170 F.3d 1092, 1099 (Fed. Cir. 1999) (citing *Lipton*, 670 F.2d at 1028); *see Lipton*, 670 F.2d at 1029 (explaining that while "the legitimacy of the petitioner's activity from which its interest arises will be presumed in the absence of evidence to the contrary," a party may "of course, seek to attack the legitimacy of [an] application or in some other way negate appellee's interest"); *cf. Lexmark*, 572 U.S. at 133 ("[A] plaintiff suing under [15 U.S.C.] § 1125(a) ordinarily must show economic or reputational injury[.]"). A petitioner may be deprived of a "legitimate commercial interest" under 15 U.S.C. § 1064 if such interest is precluded by a prior judgment, *see Empresa Cubana*, 753 F.3d at 1274–75 (explaining that a petitioner was not prevented from bringing cancellation proceedings before the TTAB because a relevant prior judgment "specifically did *not* address whether [the petitioner] could seek cancellation of the [registrations at issue]"), or a prior settlement agreement, *see Danskin, Inc. v. Dan River, Inc.,* 498 F.2d 1386, 1387 (C.C.P.A. 1974) (concluding that

a petitioner could not, as a matter of law, seek cancellation of a mark because it had entered a prior settlement agreement with the registrant to "not oppose or petition to cancel directly or indirectly any registration" by that registrant); *cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000) (noting that "parties plainly lack a continuing interest" sufficient to sustain jurisdiction "when the parties have settled"). This requirement is meant to "prevent litigation where there is no real controversy between the parties, where a plaintiff, petitioner[,] or opposer, is no more than an intermeddler." *Jewelers*, 823 F.2d at 492 (quoting *Lipton*, 670 F.2d at 1029–30).

## II. Procedural History

Naked TM, LLC ("Naked") and Australian Therapeutic Supplies Pty. Ltd. ("Australian") both sell condoms in the United States. *Australian Therapeutic Supplies Pty. Ltd. (Australian II)*, No. 9205638, 2018 WL 6929683, at *1 (T.T.A.B. Dec. 21, 2018). In April 2007, Naked and Australian entered into an "informal" settlement agreement under which Australian "agreed that it would not use or register the mark NAKED for condoms in the United States and that [Naked] could use and register the mark NAKED for condoms in the United States." *Id.* at *6, *11; *see id.* at *9 (finding that Australian "did not want to have lawyers formalize a written agreement because [Australian] did not want [Naked] to find out that [Australian] intended to circumvent their oral agreement and continue selling NAKED condoms in the United States via the Internet"). On October 30, 2007, Naked's "application . . . for the mark NAKED [(typed drawing) for condoms] [was] registered as Registration No. 3325577." *Id.* at *7. Almost five years later, on October 18, 2012, Australian, "filed a petition to cancel" Naked's registration of the NAKED mark before the TTAB, alleging "fraud, likelihood of confusion, and false suggestion of a connection" and asserting statutory standing based on Australian's "prior use" and

attempted registration "of the mark NAKED and NAKED CONDOMS both for condoms" in the United States. *Id.* at *1; *see id.* (noting that Australian subsequently "filed an Amended Petition . . . adding the ground that [Naked] did not possess the requisite bona fide intent to use the mark NAKED when it filed the underlying application for the registration at issue"); J.A. 37–44 (Petition), 52–63 (Amended Petition).

After discovery, Naked moved for "summary judgment on its affirmative defenses of estoppel, laches, acquiescence, and unclean hands." *Australian Therapeutic Supplies Pty. Ltd.* (*Australian I*), No. 9205638, 2016 WL 1659338, at *1 (Mar. 3, 2016). Australian "cross-moved for summary judgment on . . . likelihood of confusion under . . . 15 U.S.C. § 1052(d)." *Id.* The TTAB concluded that there was a "likelihood of confusion and inevitable confusion" between the two NAKED marks, *id.* at *6–7, and that, based on its finding of inevitable confusion, Naked's "equitable defenses of laches, acquiescence, equitable estoppel, and unclean hands [were] not . . . applicable," *id.* at *8. The TTAB also found, however, that "genuine disputes of material fact exist[ed] regarding [Australian's] [statutory] standing," in particular "whether the parties' previous communications and actions with respect to the use and registration of the mark NAKED resulted in an enforceable contract whereby [Australian] [wa]s precluded from using and registering the mark NAKED and challenging [Naked's] use and registration of the NAKED mark," and reserved those issues for trial. *Id.* at *5. Following trial, the TTAB concluded that Australian had "failed to prove that it ha[d] [statutory] standing" under 15 U.S.C. § 1064, to petition for cancellation of Naked's registration of the NAKED mark. *Australian II*, 2018 WL 6929683, at *1, *11. The TTAB found that Australian had previously entered a settlement agreement with Naked under which Australian had "agreed that it would not use or register the mark NAKED for condoms in the United

States and that [Naked] could use and register the mark NAKED for condoms in the United States." *Id.* at *11. It concluded that Australian, having "contracted away its right to use and register NAKED and by extension NAKED CONDOMS," had "failed to prove that it has standing to cancel the [NAKED] registration." *Id.*

On appeal, the Majority reversed and remanded. *Australian III*, 965 F.3d at 1372. The Majority concluded that "the [TTAB] erred when it determined that Australian must have proprietary rights" to petition for cancellation under 15 U.S.C. § 1064, and "that[,] based on the facts established before the [TTAB], Australian has a real interest in the cancellation proceeding and a reasonable belief of damage, thereby satisfying the statutory requirements to seek cancellation" under 15 U.S.C. § 1064. *Id.* at 1376. The Majority explained that Australian had "demonstrate[d] a real interest in the proceeding because it twice filed an application to register its unregistered mark," *id.* at 1375, and had undertaken "advertising and sales in the United States" using the NAKED mark, *id.* at 1376. I dissented. *Australian III*, 965 F.3d at 1376 (Wallach, J. dissenting). While I agreed with the Majority that Australian was not required to prove a proprietary interest in the NAKED mark, I disagreed that the TTAB had required such a proprietary interest or that Australian had a valid cause of action against Naked. *Id.* at 1377. Specifically, Australian had failed to show "a legitimate commercial interest," and therefore any real interest and reasonable belief in damages, in Naked's registration. *Id.* at 1378–79. While "[c]ontracting away one's rights to use a trademark" may not "preclude a petitioner from challenging" the registration of that mark before the TTAB, *Australian III*, 965 F.3d at 1374, seeking cancellation in breach of a settlement agreement, and pleading standing on the basis of additional breaches of that settlement agreement, does preclude a petitioner from challenging that mark, *id.* at 1378–79 (Wallach, J. dissenting).

12                    AUSTRALIAN THERAPEUTIC v. NAKED TM, LLC

Naked petitioned for rehearing en banc. *See* Appellee's Petition. Australian, at the court's request, filed a response. *See* Appellant's Resp. An amicus also filed a brief, arguing that we should use this case to clarify our 15 U.S.C. § 1064 cause of action jurisprudence—in particular, how *Lexmark* impacts our statutory standing analysis, and, if necessary, overrule *Empresa Cubana*. *See* Amicus Br. 2–3.

## DISCUSSION

*Australian III* concluded that "the [TTAB] erred when it determined that Australian must have proprietary rights" to petition for cancellation under § 1064, and "that[,] based on the facts established before the [TTAB], Australian has a real interest in the cancellation proceeding and a reasonable belief of damage, thereby satisfying the statutory requirements to seek cancellation" under 15 U.S.C. § 1064. *Australian III*, 965 F.3d at 1376. Because *Australian III*: (1) is in direct conflict with our case law requiring a "legitimate commercial interest" for a valid cause of action under 15 U.S.C. § 1064; (2) undermines our case law favoring the enforcement of settlement agreements; and (3) raises questions as to the impact of Supreme Court precedent on our statutory cause of action jurisprudence, I respectfully dissent from our denial of rehearing en banc.

## I. *Australian III* is Contrary to Our Case Law Requiring a Legitimate Commercial Interest

*Australian III* is contrary to our case law requiring that petitioners have a "legitimate commercial interest" to "satisfy the requirements for bringing cancellation proceeding[s]." *Empresa Cubana*, 753 F.3d at 1275; *see Lexmark*, 572 U.S. at 131. Before the TTAB, Australian petitioned for cancellation of Naked's registration of the NAKED mark based on likelihood of confusion with its "prior use of the mark NAKED." *Australian II*, 2018 WL 6929683, at *1; *see* Appellant's Br. 22 ("[Australian]

has a direct commercial interest in this proceeding as a result of its prior and continuing use of the NAKED [and NAKED CONDOMS] [m]arks in the advertising, marketing, and the offering for sale of condoms on its websites."); J.A. 59 (Amended Petition to Cancel) (similar). It offered evidence that it has advertised and sold condoms under the NAKED mark in the United States through its websites since at least April 2003. *Australian II*, 2018 WL 6929683, at *5; *see, e.g.*, J.A. 106, 168–70. It also offered evidence that it had applied for registration of the NAKED mark twice, first in 2003, U.S. Application Serial No. 78,758,237 ("the '237 application"), which it subsequently abandoned, *Australian II*, 2018 WL 6929683, at *8, and second, in November 2012, after it had filed its petition for cancellation in this case—U.S. Application No. 85,772,589 ("the '589 application"), J.A. 44, 1091. Based on these prior uses and attempted registrations, *Australian III* concludes that Australian has a valid cause action to challenge Naked's registration of the NAKED mark under 15 U.S.C. § 1064. *Australian III*, 965 F.3d at 1375–76.

However, the record also showed that, in 2007, Australian and Naked entered into a settlement agreement. *Australian II*, 2018 WL 6929683, at *11. Australian agreed not to register the NAKED mark in the United States, not to use the NAKED mark in the United States, and not to challenge Naked's use and registration of the NAKED mark in the United States. *Australian II*, 2018 WL 6929683, at *6–9, *11 (finding that Australian had "agreed that it would not use or register the mark NAKED for condoms in the United States and that [Naked] could use and register the mark NAKED for condoms in the United States"); *see* J.A. 1541 (Australian's Managing Director and Co-Owner conceding that he had agreed "to [Naked's] use and registration of the trademark [NAKED] in the United States"), 1556 (Australian's Managing Director and Co-Owner testifying that "I understood that we had a gentleman's agreement to coexist in the marketplace"). That is, Australian's

14                AUSTRALIAN THERAPEUTIC v. NAKED TM, LLC

petition for cancellation of the NAKED mark and its prof-fered bases for its cause of action were either superseded by or in breach of its settlement agreement with Naked. *Australian II*, 2018 WL 6929683, at \*11; J.A. 1565 (Australian's Managing Director and Co-Owner stating that Australian abandoned the '237 application based on its "negotiations" with Naked).[7]  Australian, therefore, having used and attempted to register the NAKED mark in breach of a settlement agreement and having sought cancellation in breach of that same settlement agreement, lacked a valid cause of action against Naked for registration of that mark.  *See Danskin,* 498 F.2d at 1387; *see also Job's Daughters*, 727 F.2d at 1092 (finding a legitimate commercial interest in the "longtime production and sale of merchandise with the [mark]" at issue, with "an *equal right* [to] that of [registrant-approved retailers] to use the [mark]" (emphasis added)).

*Australian III*, by finding a valid cause of action in breach of a settlement agreement, is contrary to our case law requiring a petitioner have a "legitimate commercial interest" under 15 U.S.C. § 1064.  *Empresa Cubana*, 753 F.3d at 1275; *see* 15 U.S.C. § 1127 (providing that the Lanham Act "mak[es] actionable the deceptive and misleading use of marks in . . . commerce"); *Lexmark*, 572 U.S. at 131 (explaining that the Lanham Act's zone of interests extends to "'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition'" (alterations in original) (quoting 15 U.S.C. § 1127)).

---

[7]    The TTAB also found that this breach was intentional.  *See Australian II*, 2018 WL 6929683, at \*9 (finding that "[Australian] did not want to have lawyers formalize a written agreement because [Australian] did not want [Naked] to find out that [Australian] intended to circumvent their oral agreement and continue selling NAKED condoms in the United States via the Internet").

Accordingly, rehearing en banc is necessary "to secure the uniformity of [our] decisions." FED. R. APP. P. 35(a)(1); *see Deckers*, 752 F.3d at 956 ("The courts thus abide by the theory of stare decisis to promote these twin pillars of jurisprudence: predictability and stability.").

### II. *Australian III* is Contrary to Our Case Law Favoring the Enforcement of Settlement Agreements

*Australian III* is contrary our case law favoring enforcement of settlement agreements. *See, e.g., Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) ("The law strongly favors settlement of litigation, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into."). *Australian III* alludes to the TTAB's conclusion that Australian and Naked had entered into a prior settlement agreement. *Australian III*, 965 F.3d at 1373–74. It does not, however, meaningfully address these findings. *Id.* at 1374 (stating that "[w]hile an agreement could ultimately bar Australian from proving *actual* damage, [15 U.S.C.] § 1064 requires only a *belief* of damage").

Following summary judgment, the question before the TTAB was whether Australian and Naked had a settlement agreement that precluded Australian from having a valid cause of action. *Australian I*, 2016 WL 1659338, at *3. The TTAB found that such a settlement agreement did exist—specifically, that Australian had entered into a settlement agreement with Naked under which Australian had "agreed that it would not use or register the mark NAKED for condoms in the United States and that [Naked] could use and register the mark NAKED for condoms in the United States." *Australian II*, 2018 WL 6929683, at *11. On appeal, Australian did not substantively challenge this

finding,[8] and *Australian III* does not conclude that this finding was unsupported by substantial evidence, *see generally Australian III*, 965 F.3d at 1372–73, 1375–76; *see also Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 (Fed. Cir. 2018) ("We review the TTAB's . . . findings of fact for substantial evidence." (citation omitted)), or that the TTAB misread the settlement terms, *see generally Australian III*, 965 F.3d at 1372–73, 1375–76; *see also McCall v. U.S. Postal Serv.*, 839 F.2d 664, 669 (Fed. Cir. 1988) ("[T]he interpretation of [settlement agreement terms] is a question of law."). Rather, without comment or analysis, *Australian III* recharacterizes the settlement agreement, and the parties' conduct in response to that agreement. *Compare Australian III*, 965 F.3d at 1373, *with Australian II*, 2018 WL 6929683, at *6–9, *11.

*Australian III* states both that the TTAB found "Australian [had] agreed it would not use or register its unregistered [NAKED] mark in the United States and . . . Naked could use and register its NAKED mark in the United

---

[8]    Australian asserted, in passing, that "it did not" "contract[] away its proprietary rights." Appellant's Br. 19; *see id.* at 8 (characterizing, in its statement of the facts, the parties' communications as unsuccessful settlement negotiations). Even if this is construed as argument, Australian failed to develop the point. The argument is, therefore, waived. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (providing that arguments raised only in the "background of [an] opening brief" are waived); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (providing that "mere statements of disagreement with the [lower tribunal] as to the existence of factual disputes do not amount to a developed argument" and that "a passing reference to an issue . . . will not suffice to bring that issue before this court" (internal quotation marks and citations omitted)).

States," and that the TTAB "made no finding" that "Australian [had] agreed not to challenge Naked's use and registration of the NAKED mark." *Australian III*, 965 F.3d at 1373. First, I understand this to be internally contradictory. Australian agreed to Naked's registration of the NAKED mark. *Australian II*, 2018 WL 6929683, at *11. A petition for cancellation is contrary to that agreement because it seeks to "cancel [the] registration of [Naked's] mark." 15 U.S.C. § 1064. Second, it is also incorrect. The TTAB stated that Australian's "standing is intrinsically connected with the question of whether the parties have an enforceable agreement that precludes [Australian] from using or registering the mark NAKED or NAKED CONDOMS and from challenging [Naked's] use and registration of the NAKED mark," and concluded that there was such an agreement. *Australian II*, 2018 WL 6929683, at *11; *see id.* ("[W]e find that [Australian] agreed that it would not use or register the mark NAKED for condoms in the United States and that [Naked] could use and register the mark NAKED for condoms in the United States. In view thereof, [Australian] failed to prove that it has standing to cancel the registration[.]"). Last, even if Australian's petition itself is not precluded by the settlement agreement, Australian's alleged bases for its statutory standing remain either pre-empted by or in violation of its settlement agreement with Naked. *Compare Australian III*, 965 F.3d at 1373 ("Australian agreed it would not use or register its unregistered [NAKED] mark in the United States"), *with id.* at 1375–76 (concluding that Australian had "demonstrate[d] a real interest and reasonable belief of damage" based on its attempts to use and register the NAKED mark).

Having narrowed Australian's settlement agreement obligations, *Australian III* relies on *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316 (Fed. Cir. 1983), for the proposition "that contracting away one's rights to use a trademark does not preclude challenging a mark before the

[TTAB]." *Australian III*, 965 F.3d at 1374 (citing *Selva*, 705 F.2d at 1325). This reliance is misplaced. In *Selva*, we held that the TTAB erred by "[r]efus[ing] to pass" on the issue of contractual estoppel. *Selva*, 705 F.2d at 1323–24 (capitalization normalized). We separately held that, while the TTAB had not directly addressed the issue, it had nonetheless erred by requiring "proof of damage" for standing, *id.* at 1325, when it concluded that the petitioner could not be injured because it "already ha[d] an existing," substantially similar "registration" to that it sought to cancel, *id.* at 1321. We did not reach whether a settlement agreement could preclude statutory standing. *See id.* at 1324 (remanding to the TTAB to consider "the agreement, its construction, [and] its validity if necessary to decide the issues properly before it in this cancellation proceeding, including the issue of estoppel").

"[I]t is well-established" that a settlement agreement made in absence of a writing is nonetheless "binding on the parties, particularly whe[re]," as here, "the terms are memorialized into the record." *Tiburzi v. Dep't of Justice*, 269 F.3d 1346, 1351 (Fed. Cir. 2001); *see Australian II*, 2018 WL 6929683, at *6–9, *11. *Australian III*, in concluding that Australian has a valid cause of action against Naked— that is, in concluding Australian has a legitimate commercial interest in the NAKED mark as demonstrated by its using and registering that mark in breach of a settlement agreement, as well as a valid cause of action against Naked despite having brought that action in breach of that same settlement agreement, *compare Australian III*, 965 F.3d at 1375–76, *with Australian II*, 2018 WL 6929683, at *6–9, *11—is contrary to our case law enforcing settlement agreements against would-be trademark opposers and challengers, *see Wells Cargo*, 606 F.2d at 965; *cf. Flex-Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362, 1368 (Fed. Cir. 2001) (explaining that a "promise by the licensee not to challenge the validity of [a] patent . . . implicates the important policy of enforcing settlement agreements and res judicata").

"To permit [Australian] thus to escape its obligation under the settlement w[ill] seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of settlements generally." *Hemstreet*, 851 F.2d at 350; *see Jewelers*, 823 F.2d at 492 (noting that statutory standing requirements "prevent litigation where there is no real controversy between the parties, where a plaintiff, petitioner[,] or opposer, is no more than an intermeddler"); *see also Gould v. Control Laser Corp.*, 866 F.2d 1391, 1392 (Fed. Cir. 1989) ("Settlement moots an action[.]"). Accordingly, rehearing en banc is necessary here "to secure the uniformity of [our] decisions" favoring enforcement of settlement agreements. FED. R. APP. P. 35(a)(1); *see Hubbard v. United States*, 514 U.S. 695, 714 (1995) ("Stare decisis has special force when . . . citizens have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations[.]" (internal quotation marks and citation omitted)).

### III. *Australian III* Raises Questions as to the Impact of Supreme Court Precedent on Our Statutory Cause of Action Jurisprudence

*Australian III* raises questions as to whether a party must have a valid cause of action at the time of filing. While we recently held that "[t]he *Lexmark* analytical framework is the applicable standard for determining whether a person is eligible under [15 U.S.C.] § 1064 to bring a petition for the cancellation of a trademark registration," *Corcamore,* 2020 WL 6277728, at *3, we have not resolved what impact *Lexmark*'s statement that statutory standing does not implicate subject matter jurisdiction has on when a petitioner must have a statutory cause of action, *Lexmark*, 572 U.S. at 128 n.4.

*Australian III* concludes that Australian's '589 application, which post-dates Australian's petition for cancellation, confers statutory standing on Australian.

*See Australian III*, 965 F.3d at 1375 (noting that the '589 application was made "post filing" of its petition to cancel Naked's registration of the NAKED mark and concluding that Australian has a valid cause of action to challenge Naked's registration of the NAKED mark "because the USPTO refused registration of . . . [the] '589 application[] based on a likelihood of confusion with Naked's registered mark" without addressing its "post filing" status).  There may be an argument that use of a "post filing" application is sufficient, under *Lexmark*, to establish a statutory cause of action.  *See Lexmark*, 572 U.S. at 128 n.4 (noting that statutory standing does not implicate an Article III court's subject matter jurisdiction); *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) ("[T]he issues decided by the higher court need not be identical to be controlling.  Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." (internal quotation marks and citation omitted)).  We have not, however, held that to be the law.  Instead, our current jurisprudence suggests the opposite.  Generally, "a party may not vindicate rights in court before the party actually possesses the rights." *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384 (Fed. Cir. 2015).  A petitioner must still plead and prove statutory standing as a "threshold inquiry." *Lipton*, 670 F.2d at 1028.  Trademark infringement claims require statutory standing at the time of filing. *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir.), *amended on reh'g in part*, 104 F.3d 1296 (Fed. Cir. 1996) (explaining that "[i]f [the plaintiff] can prove that it was the assignee of the [relevant trademark] at the time the suit was filed, [the plaintiff] has [statutory] standing to sue for . . . for trademark infringement under 15 U.S.C. § 1114").  Similarly, "nunc pro tunc assignments" remain "[in]sufficient to confer retroactive [statutory] standing" under 35 U.S.C. § 281. *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *see Schwendimann v. Arkwright Advanced*

*Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020) (following *Lexmark,* holding that our 35 U.S.C. § 281 statutory cause of action analysis requires consideration of "whether [the plaintiff] was a patentee at the time her action was filed").

The TTAB did not address the '589 application (or *Lexmark*) in its decision.  *See generally Australian II*, 2018 WL 6929683, at \*1–11.  Before the panel, Naked asserted that Australian's post-filing '589 application could not establish statutory standing.  Appellee's Br. 24–26.  *Australian III* does not address this timing argument and, by accepting the '589 application as evidence of statutory standing without comment, appears to extend *Lexmark* sub silentio.  *See Australian III*, 965 F.3d at 1375.  We "do[] not normally overturn, or so dramatically limit, earlier authority sub silentio."  *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 18 (2000); *see In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997) (rejecting "appellants' invitation to construe . . . the cases cited by appellants so as to overrule, sub silentio, decades old case law").  En banc review is necessary to either conform *Australian III* to our case law or resolve the uncertainties introduced by *Lexmark*.  *See* FED. R. APP. P. 35(a)(1)–(2).

## CONCLUSION

Australian lacks a legitimate commercial interest in the NAKED mark and, therefore, a valid cause of action against Naked.  *Empresa Cubana*, 753 F.3d at 1275; *see Lexmark*, 572 U.S. at 131.  There is "no real controversy between the parties"—they resolved any such controversy between themselves through settlement in 2007—leaving Australian "no more than an intermeddler" in the instant action.  *Coach Servs.*, 668 F.3d at 1376 (internal quotation marks and citation omitted); *cf. Gould*, 866 F.2d at 1392 ("When the case between the parties has been settled, there is no actual matter in controversy essential to the decision of the particular case[.]").  En banc action is necessary to

maintain the uniformity our decisions and clarify the impact of *Lexmark* on those decisions. *See* FED. R. APP. P. 35(a)(1)–(2). Accordingly, I respectfully dissent from our denial of rehearing en banc.